**TEXAS EMPLOYERS' INS. ASS'N v. PHILLIPS.**

No. 2393.

Court of Civil Appeals of Texas. Beaumont.
June 21, 1933.

Rehearing Denied July 19, 1933.

Seale & Thompson, of Nacogdoches, and Wm. Cramer, of Dallas, for plaintiff in error.

Adams. & McAlister, of Nacogdoches, for defendant in error.

WALKER, Chief Justice.

The appeal is by writ of error, but the parties will be referred to as appellant and appellee. The case was a suit in district court, for compensation. Appellee, Jim Phillips, was the employee; Garrison Brick & Tile Company, the employer; and appellant, Texas Employers' Insurance Association, the compensation insurance carrier, under the provisions of the Workmen's Compensation Act, articles 8306–8309, R. S. 1925 (as amended). Appellee's claim for compensation was duly submitted to the Industrial Accident Board, but not being satisfied with the award, partly in his favor, entered on the 19th day of May, 1931, he duly prosecuted his appeal to the district court of Nacogdoches county. No point is made against the sufficiency of appellee's petition to state a cause of action for the relief prayed for nor of appellant's answer to present its defenses. So, as the nature of appellee's injuries is not involved in the appeal, it is not necessary to give a summary of the pleadings. Eleven issues were submitted to the jury but answers were given only to questions 1, 2, 3, 4, and 11, which were as follows, answered as indicated:

"Special Issue No. 1: Do you find from a preponderance of the evidence that Jim Phillips sustained personal injuries while in the course of his employment with the Garrison Brick & Tile Company on Oct. 10, 1930?"

Answer: "Yes."

"Special Issue No. 2: Do you find from a preponderance of the evidence that such injuries, if any, resulted in his total incapacity to perform labor?"

Answer: "Yes."

"Special Issue No. 3: Do you find from a

preponderance of the evidence that such total incapacity, if any, of Jim Phillips is permanent?"

Answer: "Yes."

"Special Issue No. 4: Do you find from a preponderance of the evidence that manifest hardship and injustice will result to the plaintiff, Jim Phillips, if his compensation, if any, is not paid to him in a lump sum?"

Answer: "Yes."

"Special Issue No. 11: Do you find and believe from a preponderance of the evidence that the condition of Jim Phillips is not contributed to in any degree by any disease or condition existing prior to October 10, 1930?"

Answer: "Yes."

Upon the verdict and additional fact conclusions deduced by the court from the undisputed evidence, judgment was entered in appellee's favor for the lump sum of $3,379.16.

## Opinion.

■ The following bill of exceptions was brought up by certiorari, and constitutes reversible error:

"Be it remembered; that upon the trial of the above entitled and numbered cause, the following proceeding were had, to-wit: That during the closing argument of R. A. McAlister, one of the Attorney for Plaintiff in this cause, he made the following statement to the Jury, to-wit:

" 'I ask you to go out and render this verdict for Jim Phillips; I ask you to go out and answer Special Issues 1, 2, 3 and 4 "yes" and then skip to Special Issue No. 11 and answer it "yes".'

"That to evidence such matter, the Defendant tenders this, its Bill of Exception No. 1, and asks the Court to examine, approve and order the same filed as a part of the record in this cause.

"Wm. M. Cramer,
"Attorney for Defendant.

"The foregoing Bill of Exception having been examined is by the Plaintiff approved.
"Adams & McAlister,
"Attorneys for Plaintiff.

"The foregoing Bill of Exception having been examined and found correct is approved and ordered filed as a part of the record in this cause.
"C. E. Brazil,
"Dist. Judge Presiding."

This argument was not only a direct appeal to the jury to return a verdict in favor of appellee, Jim Phillips, which was improper [Gulf, C. & S. F. Ry. Co. v. Harvey (Tex. Com. App.) 276 S. W. 895; McFaddin v. Hebert, 118 Tex. 314, 15 S.W.(2d) 213], but also instructed the jury the proper answers to make to the questions in order to return a verdict in his favor and then to "skip" the remaining questions. The jury followed literally the instructions given by the argument complained of. Under McFaddin v. Hebert, supra, this argument constituted reversible error.

■ Texas Indemnity Ins. Co. v. McCurry (Tex. Com. App.) 41 S.W.(2d) 215, 218, 78 A. L. R. 760, answers appellee's criticism of appellant's bill that no exception was reserved to the argument at the time it was made and no request was made to instruct the jury not to consider it, and that the bill fails to state that the argument was not in reply to argument of counsel for appellant, and that it was not provoked by argument of counsel for appellant. These very criticisms were before the court in the case cited and affirmatively denied. There is no merit in the additional suggestion that the argument complained of was not made consecutively, as shown by the bill. If appellee is correct in this proposition, the facts should have been reflected by a proper qualification by the trial judge to the bill.

■■ We recognize that it is not always reversible error to instruct a jury as to the effect of their answers; for instance, when a man of ordinary intelligence would readily understand the legal effect of his answers to the questions submitted to him, such argument does not constitute reversible error. If it could be said that a layman of ordinary intelligence, with no legal experience, would have known the effect of the requested answers to questions 1, 2, 3, 4, and 11, without the introductory statement that counsel wanted the jury to render a verdict for Jim Phillips, it cannot be said that he would have understood the effect of his answers to the questions which counsel asked the jury to skip. The questions thus referred to by counsel were as follows:

"Special Issue No. 5: Do you find from the preponderance of the evidence that such total incapacity, if any, of Jim Phillips has terminated?"

"Special Issue No. 6: When do you find from a preponderance of the evidence that Jim Phillips' total incapacity, if any, terminated?"

"Special Issue No. 7: When do you find from a preponderance of the evidence that Jim Phillips' total incapacity, if any, will terminate?"

"Special Issue No. 8: Do you find from a preponderance of the evidence that Jim Phillips will be partially incapacitated for the performance of labor after his total incapacity, if any, has terminated?"

"Special Issue No. 9: How many weeks, if any, do you find from a preponderance of the evidence that Jim Phillips will be partially incapacitated for the performance of labor?"

"Special Issue No. 10: What percentage of

incapacity, if any, for the performance of labor do you find from a preponderance of the evidence that Jim Phillips has suffered or will suffer after the termination of his total incapacity, if any?"

■ Paragraph No. 1 of appellee's trial amendment was as follows: "That upon failure and refusal of the said Texas Employers Insurance Association to pay him the weekly installments of compensation to which he was entitled, the said Jim Phillips was compelled to present his claim for compensation to the Industrial Accident Board of the State of Texas, which he did within six months from the date of said accident and injury, and whereupon, after giving due notice to all interested parties, the said Industrial Accident Board made its final ruling, decision and award in favor of the said Jim Phillips and against the said Texas Employers Insurance Association wherein and whereby the said Texas Employers Insurance Association was ordered and directed to pay to the said Jim Phillips compensation for the fixed and definite period of twenty and two-sevenths weeks at the rate of $10.38 per week, aggregating $210.57, commencing Oct. 10, 1930, the date of said injury, less any credit of any previous payments of compensation, if any, and less 15% awarded to Adams & McAlister, attorneys, from which said award the said Jim Phillips, being dissatisfied, has appealed in this proceeding to have set aside, annulled and vacated."

Under the holding of this court in Indemnity Ins. Co. of North America v. Garsee, 54 S.W.(2d) 817, twelfth syllabus, this pleading was error. Appellee suggests that appellant could not have been prejudiced by the plea because it showed on its face that he was awarded by the Industrial Accident Board only $210.57, while in this suit he was asking for compensation for total permanent incapacity, and was awarded $3,379.16. In answer to the suggestion, it can be said that the pleading improperly carried the inference to the jury that the board had not only awarded appellee $210.57, but had also found in his favor facts necessary to sustain his cause of action, except as to the extent of his disability.

■ As we construe the undisputed evidence, the independent finding by the court on average weekly wage has support. Appellant's proposition is: "Where the wages of Jim Phillips had been permanently decreased, it was error to allow compensation based upon his wage prior to said permanent decrease."

In support of its proposition appellant cites Petroleum Casualty Company v. Williams (Tex. Com. App.) 15 S.W.(2d) 553, 556, where it is said: "At this point we will further say that if the facts of the case at bar showed a reasonably permanent employment of the deceased at the time of injury in the class of employment at which he was then working, we would be inclined to compute the average annual wages on the basis of the wages of deceased at the time of injury; but we do not believe that the agreed employment record of deceased would justify us in doing so in this case. Of course where the employment record shows that the injured employee has been permanently promoted at a higher wage, and at the time of injury is working at such permanently higher wage, it would be right and proper in such a case to compute the average annual wages for the purposes of allowing compensation on the basis of the wages received at the time of injury. Conversely, the same rule would apply where the employee has been permanently demoted at lower wages. This construction of the statute is in harmony with logic and sound economic principles, and such may be looked to in construing the intent and purpose of the statute, where it aids the court in doing so."

Upon the facts before us, the propositions announced by the case cited are not in point. However, as the evidence is adduced upon this issue upon another trial, the trial court should be governed by the case cited.

For the reasons stated, the judgment of the lower court is reversed and the cause remanded.